PREET BHARARA
United States Attorney for the
Southern District of New York
By:  DANIEL P. FILOR
        ELLEN LONDON
Assistant United States Attorneys
86 Chambers Street -- 3rd Floor
New York, New York 10007
Telephone: (212) 637-2726/2737
Facsimile: (212) 637-2717
Email:  Daniel.Filor@usdoj.gov
          Ellen.London@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re:                                                      :      Chapter 11
                                                            :
AMBAC FINANCIAL GROUP, INC.,                                :      Case No. 10-15973 (SCC)
                                                            :
                  Debtor,                                   :
                                                            :
_____                        :
                                                            :
AMBAC FINANCIAL GROUP, INC.,                                :
                                                            :
                              Plaintiff,                     :      Adv. Pro. No.:  10-4210
                                                            :
v.                                                          :
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                              Defendant.                     :
                                                            :
------------------------------------------------------------------x

**UNITED STATES' MEMORANDUM IN OPPOSITION TO MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
**PURSUANT TO SECTIONS 105(a) AND 362(a) OF THE BANKRUPTCY**
**CODE AND RULE 7065 OF THE BANKRUPTCY RULES**

**TABLE OF CONTENTS**

Preliminary Statement ................................................................................................. 1

Background ................................................................................................................... 4

      A.    Ambac's Bankruptcy ........................................................................ 4

      B.    This Adversary Proceeding .................................................................. 7

Argument ...................................................................................................................... 8

      The Government's Sovereign Immunity Bars the Relief Sought
      By Ambac's PI Motion...................................................................................... 8

Conclusion .................................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**

*American Bicycle Associate v. United States,*
895 F.2d 1277 (9th Cir. 1990).................................................................. 9, 12

*In re Bankr. Court's Use of a Standardized Form of Chapter 13
Confirmation Order that Enjoins IRS to Redirect Tax Refunds to
Chapter 13 Trustees,*
423 B.R. 294 (E.D. Mich. 2010) ................................................................ 10

*Bianco v. IRS,*
No. 93 Civ. 3953, 1994 WL 538020 (S.D.N.Y. Oct. 3, 1994)...................... 11

*Brandt-Airflex, Corp. v. Long Island Trust Co.,*
843 F.2d 90 (2d Cir. 1988) ......................................................................... 13

*In re Datair System Corp.,*
37 B.R. 690 (Bankr. N.D. Ill. 1983)............................................................ 12

*Enochs v. Williams Packing & Nav. Co.,*
370 U.S. 1 (1962)......................................................................................... 9

*In re G-1 Holdings Inc.,*
420 B.R. 216 (Bankr. D.N.J. 2009)................................................. 12, 13, 14

*In re H & R Ice Co.,*
24 B.R. 28 (Bankr. W.D. Mo. 1982)............................................................ 12

*In re Hall,*
123 B.R. 441 (Bankr. N.D. Ga. 1990).................................................. 10, 12

*In re John Renton Young, Ltd.,*
87 B.R. 635 (Bankr. D. Nev. 1988)............................................................ 12

*In re Jon Co.,*
30 B.R. 831 (D. Colo. 1983)........................................................................ 12

*In re La Difference Restaurant, Inc.,*
63 B.R. 819 (S.D.N.Y. 1986) ...................................................................... 12

*Matter of LaSalle Rolling Mills, Inc.*,
    832 F.2d 390 (7th Cir. 1987)..................................................................... 12

*Laughlin v. United States Internal Revenue Service*,
    912 F.2d 197 (8th Cir. 1990)..................................................................... 9

*Linn v. Chivatero*,
    714 F.2d 1278 (5th Cir. 1983)................................................................... 10

*In re Driscoll's Towing Service, Inc.*,
    51 B.R. 990 (D.C. Fla. 1985)..................................................................... 12

*Morelli v. Alexander*,
    920 F. Supp. 556 (S.D.N.Y. 1996) ........................................................... 10

*In re Pressimone*,
    39 B.R. 240 (N.D.N.Y. 1984).......................................................... 9, 11, 12

*In re Quattrone Accountants, Inc.*,
    88 B.R. 713 (Bankr. W.D. Pa. 1988)......................................................... 12

*United States v. Dalm*,
    494 U.S. 596 (1990)................................................................................... 9

*United States v. Mitchell*,
    445 U.S. 535 (1980)................................................................................... 9

*United States v. Nordic Village, Inc.*,
    503 U.S. 30 (1992)..................................................................................... 9

*United States v. Plainwell, Inc.*,
    No. 00-4350, 2004 WL 2345717 (D. Del. Oct. 7, 2004) ............................ 10

*United States v. Rayson Sports, Inc.*,
    44 B.R. 280 (D.C. Ill. 1984)...................................................................... 12

*Upton Printing Co. v. United States*,
    116 B.R. 66 (E.D. La. 1989)...................................................................... 10

*Weiner v. IRS*,
    986 F.2d 12 (2d Cir. 1993) ....................................................................... 11

## STATUTES

11 U.S.C. § 105 ................................................................. 1, 9, 10, 12

11 U.S.C. § 106 ................................................................. 9, 10, 12

11 U.S.C. § 362 ................................................................. 1, 9, 10, 12

26 U.S.C. § 6213 ................................................................ 4, 11

26 U.S.C. § 6231 ................................................................ 11

26 U.S.C. § 6331 ................................................................ 11

26 U.S.C. § 7421 ................................................................ 2, 9

28 U.S.C. § 157 ................................................................. 2, 14

## REGULATIONS AND RULES

26 C.F.R. § 1.446-3 ............................................................ 5, 6

Fed. R. Bankr. P. 7065 ....................................................... 1

Defendant the United States of America (the "United States" or the "Government"), by and through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in opposition to Debtor's Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code and Rule 7065 of the Bankruptcy Rules (the "PI Motion").

## PRELIMINARY STATEMENT

In this adversary proceeding, Ambac Financial Group, Inc. ("Ambac" or "Debtor") is seeking a declaration that it has no tax liability for tax years 2003 through 2008 and that it is entitled to retain tax refunds that were tentatively paid to it by the Internal Revenue Service (the "IRS"). Ambac also is seeking an injunction restraining the IRS from taking any enforcement action against Ambac's non-debtor subsidiaries without first providing Ambac with five days' notice of such action.

At the heart of Ambac's case is its contention that its method of accounting for credit default swaps ("CDSs") – which was the basis for its recovery of tax refunds of over $700 million – was proper. As described in the Government's Memorandum in Support of Motion to Withdraw the Reference ("Withdrawal Motion"), resolution of this issue would require the court adjudicating this issue to wrestle with difficult and novel questions of tax law. In addition, resolution of the injunction claim sought in the adversary proceeding, and likewise the PI Motion, would require a court to determine whether the injunction requested is barred by

the doctrine of sovereign immunity.  The injunctive relief Ambac seeks raises

questions of federal tax law under the Internal Revenue Code ("IRC") that

potentially conflict with the Bankruptcy Code.  Ambac seeks to enjoin the IRS from

exercising its statutory powers under various provisions of the IRC to assess tax

liabilities against a large number of non-debtor companies or to take any collection

actions without giving Debtor five days' advance notice.  As described in the

Withdrawal Motion, Debtor's view that the Bankruptcy Court's equitable powers

can effectively override the statutory powers of the IRS under the IRC is a question

involving substantial interpretation of federal non-bankruptcy law which 28 U.S.C.

§ 157 mandates the district court decide.  Accordingly, the Government has sought

that the reference of the adversary proceeding, as well as the PI Motion, to the

Bankruptcy Court be withdrawn.

The relief sought by Ambac in the PI Motion is unprecedented and would

violate the IRS's sovereign rights under the IRC.  The Anti-Injunction Act, 26

U.S.C. § 7421(a), states in no uncertain terms that "no suit for the purpose of

restraining the assessment or collection of any tax shall be maintained *in any court*

by any person" (emphasis added).  While Congress provided a waiver of the

Government's sovereign immunity for bankruptcy courts to issue orders preventing

Government actions against a debtor in bankruptcy, Congress has not waived the

United States' sovereign immunity to allow a bankruptcy court to enjoin IRS

assessment and collection actions against debtors (other than enforcing the

statutory stay or statutory discharge injunction), let alone non-debtors.  Indeed, the

2

Anti-Injunction Act expressly prohibits injunctions against the IRS as to non-

debtors.

Preventing the IRS from taking any actions it rightfully may pursue to assess

or collect any tax liability under the IRC without providing five days' advance notice

to Debtor would fly in the face of the detailed statutory and regulatory framework

under the IRC governing federal tax assessment and collection and subvert its very

purpose.  As Ambac acknowledges in its adversary proceeding complaint, the IRC

authorizes the IRS, pursuant to IRC § 6213(b)(3), to assess and collect any tax

liability relating to the tentative refund Debtor claimed without being required to

provide notice, and to make a jeopardy assessment and collect on such assessment

without providing advance notice.  In enacting these provisions of the IRC,

Congress intended to provide the IRS with the necessary tools to act quickly to seize

funds or at least establish a lien if it deems the funds to be in danger of being

dissipated.  Therefore, the relief requested in Debtor's PI Motion would defeat the

purpose of the tools Congress provided to the IRS by the IRC.

The Anti-Injunction Act prohibits the relief sought by Ambac, and because

the IRS has specifically reserved its sovereign immunity to such an injunction by

carving such relief out of every other statutory waiver of sovereign immunity, this

Court does not have jurisdiction to issue the requested relief.  Therefore, the Court

should deny the PI Motion.  Alternatively, the Court should defer deciding the PI

Motion until after the Government's Withdrawal Motion has been resolved by the

district court.

3

## BACKGROUND

### A.   Ambac's Bankruptcy

According to Debtor's complaint, Ambac is a holding company that depends on dividends from its wholly-owned subsidiary, Ambac Assurance Corporation ("AAC"), in order to meet its financial obligations.  Complaint for Injunctive Relief and Declaratory Judgment Determining Amount of Tax Liability ("Compl.") ¶ 11. AAC is a "financial guaranty insurance company" based in Wisconsin and regulated by the Office of the Commissioner of Insurance of the State of Wisconsin ("OCI"). *Id.*  In 1998, AAC created a limited liability company called Ambac Credit Products LLC ("ACP") to write credit default swaps in which ACP sold credit protection relating to "municipal and corporate obligations and asset-backed securities" (collectively, "Reference Obligations").  *Id.* ¶ 16.  Because ACP is a disregarded entity, "AAC is treated as the party to the CDSs for federal income tax purposes." *Id.*

Between 1999 and 2004, ACP's CDS contracts obligated AAC to purchase a Reference Obligation upon the occurrence of a credit event.  *Id.* ¶ 17.  The contracts subsequently required cash settlement, as opposed to physical settlement.  *Id.* Ambac treated these contracts as put options for purposes of calculating its federal income taxes.  *Id.*

ACP allegedly changed the form of its CDS contracts in 2005 so that the contracts no longer required physical or cash settlement and contract termination at the time of a credit event.  *Id.* ¶ 18.  Instead, ACP is required "to make payments

4

to the counterparty each time the issuer of a Reference Obligation fails to pay either scheduled interest or principal (unless ACP exercises its right to purchase the Reference Obligation)." *Id.* In exchange, Ambac alleges that the counterparty is obligated to make certain payments to ACP that are calculated in accordance with "(i) a fixed rate, (ii) a notional amount that varies based on objective financial information about the underlying Reference Obligations . . ., and (iii) a specified interval." *Id.*

Ambac treated the post-2004 CDS contracts the same as the pre-2005 CDS contracts in its income tax returns for the tax years 2005 and 2006. *Id.* ¶ 20. However, in 2008, Ambac reported losses for the first time on its CDS contracts. *Id.* ¶ 21. Working with its accounting firm KPMG, Ambac then decided that it could classify post-2004 CDS contracts as "notional principal contracts" rather than as put options. *Id.* ¶ 22. Ambac consequently interpreted Proposed Treasury Regulation § 1.446-3(g)(6), which addresses notional principal contracts, as applying to the CDS contracts and as permitting the use of the impairment method of accounting. *Id.* In April 2008, Ambac filed a request with the IRS for a change in accounting method using IRS Form 3115, seeking permission to use the impairment method. *Id.* ¶ 23. Subsequently, Ambac filed a supplemental letter in September 2008 asserting that it was in fact entitled to adopt the impairment method of accounting as to losses; its reasoning for this was that it had not in fact adopted an accounting method for losses, having never suffered losses prior to 2007. *Id.*

5

Applying the impairment method to its losses, Ambac "treated as an ordinary loss the amount it estimated it would be required to pay in respect of the CDSs." *Id.* ¶ 24. This allegedly allowed Ambac to report $33 million in losses for 2007 and $3.2 billion in losses for 2008. *Id.* On the bases of these purported losses, Ambac filed claims for tentative carryback adjustments on September 23, 2008, August 11, 2009, and December 21, 2009. *Id.* ¶ 27. In response, the IRS tentatively refunded to Ambac: $11,470,930 in December 2008; $252,704,185 in September 2009; and $443,940,722 in February 2010. *Id.* Ambac distributed these funds to AAC pursuant to a tax sharing agreement. *Id.* ¶ 29.

In March 2010, AAC received OCI's approval to establish a "segregated account," pursuant to Wisconsin law, and the OCI commenced rehabilitation proceedings with regard to this segregated account. *Id.* ¶ 12. OCI filed a plan of rehabilitation on October 8, 2010, and a confirmation hearing was held in November 2010. *Id.* ¶ 14. OCI, Ambac, and a committee of senior noteholders entered into a term sheet in which the parties agreed to allocate any liabilities relating to the IRS tentative tax refunds to the segregated account. *Id.* ¶ 41. In addition, on November 8, 2010, OCI obtained a state court injunction purportedly preventing the IRS from taking any enforcement actions against AAC and its subsidiaries (the "State Court Injunction"). *Id.* The Government has sought to remove the rehabilitation proceeding to federal district court in Wisconsin and to have the State Court Injunction vacated by the district court.

On October 28, 2010, the IRS issued an Information Document Request ("IDR") to Ambac seeking information regarding the tentative refunds and the accounting method that was the basis for the refunds. *Id.* ¶ 30.

On November 9, 2010, Ambac commenced a voluntary case under Chapter 11 of the Bankruptcy Code. *Id.* ¶ 4. Only Ambac, the holding corporation, and not any of its operating subsidiaries, is a debtor in the Chapter 11 bankruptcy. *Id.* ¶¶ 9, 11.

**B.     This Adversary Proceeding**

On November 9, 2010, Ambac also filed its adversary proceeding seeking a declaratory judgment that Ambac has no tax liability for tax years 2003 through 2008 and is entitled to keep the tentative refunds and an injunction preventing the IRS from taking any enforcement action that would violate the State Court Injunction without providing five days' prior notice. *Id.* ¶ 2.

Also on November 9, 2010, Ambac filed the PI Motion, seeking a temporary restraining order and a preliminary injunction barring the IRS from taking enforcement action contrary to the State Court Order ("whether or not such [Order] remains in effect") without providing five days' prior notice. PI Motion at 1-2. Specifically, the PI Motion seeks to enjoin the IRS "from asserting liens against and levying upon the assets of AAC and its subsidiaries" without providing five business days' written notice to Debtor. *Id.* at 1-2; ¶¶ 17, 45.

A hearing was held on the afternoon of November 9, 2010 – the same day that Ambac filed its adversary complaint and the PI Motion – during which the IRS agreed, solely until such time as the PI Motion is decided, to provide Debtor five

7

days' notice prior to taking any enforcement action that would violate the State

Court Injunction.

## ARGUMENT

**Ambac's PI Motion Should Be Denied for Lack of Jurisdiction
Because the Relief It Seeks is Barred By Sovereign Immunity**

In the PI Motion, Debtor seeks a preliminary injunction preventing the IRS

from utilizing its statutory powers under various provisions of the IRC to take any

collection actions against Debtor's affiliated non-debtor companies unless IRS

provides Debtor with five days' notice. *See* PI Motion at 1-2; ¶¶ 17, 45; *see also id.*

¶¶ 41, 42 (describing IRS's usual ability to lien or levy without notice); Compl. ¶¶

83, 85 (seeking permanent injunction enjoining IRS enforcement actions); Compl.

¶¶ 33, 34 (describing normally permissible IRS enforcement actions under the IRC

without notice).

The relief sought by Debtor is unprecedented and would violate the IRS's

sovereign rights under the IRC.  The relief is also inconsistent with the automatic

stay provisions of the Bankruptcy Code that spell out when the stay applies to a co-

debtor and exempts from the stay the creation of a tax lien as long as it does not

affect property of the estate.  The allegation that the bankruptcy court's equitable

powers in section 105(a) can trump the IRC and the IRS's sovereign immunity as

alleged is a weighty question that should be decided by a district court.

It is well established that the United States has sovereign immunity unless it

consents to suit.  *United States v. Dalm*, 494 U.S. 596, 608 (1990).  The sovereign

8

immunity of the United States may be waived only by federal statute. *Presidential Garden Assoc. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999). A waiver of sovereign immunity must be explicit, and any waiver is strictly construed in favor of the sovereign. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992). Waivers of sovereign immunity are not to be "liberally construed." *Id.* Failure to waive sovereign immunity by the United States deprives the federal court of subject matter jurisdiction. *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

The Anti-Injunction Act states: "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The Act's "manifest purpose . . . is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue." *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962).

While Congress provided a waiver of the Government's sovereign immunity for bankruptcy courts to issue orders preventing Government actions *against a debtor* in bankruptcy, *see* 11 U.S.C. §§ 105, 106, 362, courts have found that sovereign immunity has not been waived to allow a bankruptcy court to enjoin IRS assessment and collection actions *against non-debtors*, and the Anti-Injunction Act prohibits an injunction against the IRS regarding non-debtors. *See, e.g.*, *Laughlin v. U.S. Internal Revenue Service*, 912 F.2d 197, 199-200 (8th Cir. 1990) (Anti-

9

Injunction Act barred entry of order requiring IRS to provide more detail in notice of levy to trustee of Chapter 13 bankruptcy estates or to file adversary proceeding before filing notice of levy); *American Bicycle Assoc. v. United States*, 895 F.2d 1277, 1279-80 (9th Cir. 1990) (Bankruptcy Code § 105 does not override Anti-Injunction Act, and bankruptcy court cannot enjoin IRS from collecting penalty against responsible officer of debtor corporation); *In re Bankr. Court's Use of a Standardized Form of Chapter 13 Confirmation Order that Enjoins IRS to Redirect Tax Refunds to Chapter 13 Trustees*, 423 B.R. 294, 300-02 (E.D. Mich. 2010) (Anti-Injunction Act bars bankruptcy court from directing IRS to submit debtor's future tax refunds to Trustees); *United States v. Plainwell, Inc. (In re Plainwell)*, No. 00-4350, 2004 WL 2345717, at *2 (D. Del. Oct. 7, 2004) (sovereign immunity barred bankruptcy court order enjoining IRS from collecting taxes from debtor's officers and directors); *Hall v. IRS (In re Hall)*, 123 B.R. 441, 444 (Bankr. N.D. Ga. 1990) (Anti-Injunction Act bars injunction against IRS to collect joint taxes of debtor from her non-debtor husband); *Upton Printing Co. v. United States (In re Upton Printing Co.)*, 116 B.R. 66, 66-67 (E.D. La. 1989) (Anti-Injunction Act precludes injunction against IRS collecting penalty from debtor's president and sole shareholder); *Pressimone v. IRS (In re Pressimone)*, 39 B.R. 240, 246 (N.D.N.Y. 1984) (Anti-Injunction Act bars injunction against IRS under § 105 to collect joint taxes of debtor from her non-debtor husband).

The Anti-Injunction Act is "broadly construed to include not only assessment and collection, but also 'activities which are intended to or may culminate in the

10

assessment or collection of taxes.'" *See Morelli v. Alexander*, 920 F. Supp. 556, 559

(S.D.N.Y. 1996) (quoting *Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983))

(Anti-Injunction Act bars taxpayer from bringing suit for pre-enforcement review of

notice of intent to levy and other notices received from IRS; stating that "purpose of

§ 7421 is to protect the government's need to assess and collect taxes as

expeditiously as possible with a minimum of pre-enforcement judicial interference");

*see also Weiner v. IRS*, 986 F.2d 12, 13 (2d Cir. 1993) (taxpayer suit seeking apology

or explanation of errors that caused improper levy barred by Anti-Injunction Act);

*Bianco v. IRS*, No. 93 Civ. 3953, 1994 WL 538020, at *2 (S.D.N.Y. Oct. 3, 1994)

(claim regarding the state of taxpayer's records and requests for corrections barred

by Anti-Injunction Act).

Preventing the IRS from taking any actions it rightfully may pursue to assess

or collect any tax liability under the IRC without providing five days' notice to

Debtor would vitiate the purpose of those provisions of the IRC that expressly

authorize IRS to initiate assessment and collection activities without advance

notice.  Indeed, Debtor concedes that IRC § 6213(b)(3) authorizes the IRS to assess

and collect any tax liability relating to the tentative refund Debtor claimed without

being required to provide notice.  Compl. ¶ 33.  In addition, the IRS has the right,

pursuant to IRC §§ 6213, 6231, 6331 and 6861, to make a jeopardy assessment and

collect on such assessment without providing advance notice.  Compl. ¶ 34.

Congress enacted these provisions for a simple yet vital reason – to protect the

public fisc.  These provisions of the IRC are intended to provide the IRS with the

11

necessary tools to act quickly to seize funds if it deems the funds to be in danger of

being dissipated.  Therefore, the relief requested in Debtor's preliminary injunction

motion would defeat the purpose of the tools Congress provided to the IRS by the

IRC.

   Debtor requests that the Bankruptcy Court ignore the statutory and

regulatory framework of the federal tax laws, and simply override them via judicial

fiat.  According to Debtor, the equitable powers of the Bankruptcy Court trump the

IRC and authorize a broad injunction banning the IRS from taking enforcement

actions against dozens of companies affiliated with Debtor *which are not debtors* in

this or any Chapter 11 bankruptcy proceeding.  This requested relief is

unprecedented.  Indeed, Debtor relies on one case from a New Jersey district court

that issued an injunction against the IRS concerning actions against affiliated non-

debtors.  *See* PI Motion ¶ 47 (citing *In re G-1 Holdings Inc.*, 420 B.R. 216 (Bankr.

D.N.J. 2009)).[1]  That case, however, ordered nothing like what Debtor seeks here.

---

[1]   Other cases cited by Debtor, *see* PI Motion at 26 n.12 (citing *In re La Difference Restaurant, Inc.*, 63 B.R. 819 (S.D.N.Y. 1986) and *In re Bostwick*, 521 F.2d 741 (8th Cir. 1975), involve injunctions against the IRS preventing actions against a bankrupt debtor – *not* actions against non-debtors – and are therefore inapposite. Debtor also cites *In re Jon Co.*, 30 B.R. 831 (D. Colo. 1983); *In re H & R Ice Co.*, 24 B.R. 28 (Bankr. W.D. Mo. 1982); and *In re Datair Sys. Corp.*, 37 B.R. 690 (Bankr. N.D. Ill. 1983), *see* PI Motion at 26 n.12, which held that the Anti-Injunction Act did not preclude jurisdiction to enjoin the IRS from taking actions against non-debtors. However, this line of cases has been since rejected by numerous courts, including the Second Circuit.  *E.g.*, *American Bicycle*, 895 F.2d at 1279-80 (9th Cir. 1990); *In re LaSalle Rolling Mills, Inc.*, 832 F.2d 390, 394 (7th Cir. 1987); *Hall*, 123 B.R. at 444; *In re Quattrone Accountants, Inc.*, 88 B.R. 713, 720-21 (Bankr. W.D. Pa. 1988); *In re John Renton Young, Ltd.*, 87 B.R. 635, 638-41 (Bankr. D. Nev. 1988); *In re Driscoll's Towing Service, Inc.*, 51 B.R. 990, 991 (S.D. Fla. 1985); *United States v.*

12

In confirming the debtor's plan of bankruptcy, and thus acting pursuant to

Bankruptcy Code sections 1123 and 1141, the *G-1 Holdings* court limited the IRS

from collecting from affiliated non-debtor companies more than the amount IRS was

entitled to receive under the bankruptcy plan from the Debtor.[2]  *Id.* at 279.  Of

particular importance was the court's finding in *G-1 Holdings* that there had been a

waiver of sovereign immunity.  The court reasoned that it was confirming a

bankruptcy plan in which "the IRS has filed a proof of claim . . . [and] thus, [the

IRS] is deemed to have waived sovereign immunity," *id.* at 280 n.69.  *See also id.* at

280 ("the IRS is unimpaired under the Plan").  While the Government does not

agree that there was a waiver of sovereign immunity in *G-1 Holdings*, there clearly

could not be any similar finding of a waiver in this case because there is no

bankruptcy plan being confirmed under which the IRS is unimpaired.

    In the present case – where the IRS has not filed a claim, where there is no

plan being confirmed, and where there is no indication that the IRS will be

unimpaired under the bankruptcy plan – Ambac's purported reliance on the *G-1*

---

*Rayson Sports, Inc.*, 44 B.R. 280, 282-83 (N.D. Ill. 1984); *Pressimone*, 39 B.R. at 246;
*see also Brandt-Airflex, Corp. v. Long Island Trust, Co.*, 843 F.2d 90, 95-96 (2d Cir.
1988) (rejecting *H&R Ice* and *Jon* on grounds that Bankruptcy Code § 505(a) does
not provide bankruptcy code jurisdiction to determine tax liability of non-debtors).

[2]  Debtor mischaracterizes the court's ruling in *G-1 Holdings*.  While that court did
state *in dicta* that the Bankruptcy Code could provide authority to enjoin the IRS "if
th[e] Court's order were to comprise an injunction barring the IRS from collection
against non-debtor affiliates," *see G-1 Holdings*, 420 B.R. at 279, it specifically
stated that "[b]y issuing an order that confirms section 2.4 of the Plan, [it] was not
preventing the IRS from assessing against [the non-debtor affiliate], or other non-
debtor affiliates." *Id.*

*Holdings* to support the unprecedented relief requested in its PI Motion case is wholly unpersuasive.

By requesting the relief set forth in its PI Motion, Ambac seeks to make new law in contravention of the IRS's sovereign immunity. As described in the Government's Withdrawal Motion (at 23-28), such a determination involves a substantial interpretation of federal tax law that 28 U.S.C. § 157 requires be decided by a district court. Indeed, as the court in *G-1 Holdings* acknowledged, "a tension exists between the [IRC's] Anti-Injunction Act and the Bankruptcy Code." *Id.* Accordingly, this Court should defer deciding the PI Motion until the district court resolves the Government's Withdrawal Motion. Such deferral will cause no prejudice to Debtor, as IRS has already stipulated, pending resolution of the PI Motion, to the relief Debtor seeks.

## CONCLUSION

The Court should deny the PI Motion for lack of subject matter jurisdiction or

defer deciding the motion until the district court resolves the Government's pending

Withdrawal Motion.

Dated:  New York, New York
        January 14, 2011

PREET BHARARA
United States Attorney for the
Southern District of New York

By:     s/ Daniel P. Filor_____
        DANIEL P. FILOR
        ELLEN M. LONDON
        Assistant United States Attorneys
        86 Chambers Street -- 3rd Floor
        New York, New York 10007
        Telephone: (212) 637-2726
        Facsimile:  (212) 637-2717
        Email: Daniel.Filor@usdoj.gov
        *Attorneys for the United States of America*